Bridget Hill, Bar No. 6-3616
Ryan Schelhaas, Bar No. 6-3321
Jay Jerde, Bar No. 6-2773
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7841
(307) 777-6869 Facsimile
bridget.hill@wyo.gov
ryan.schelhaas@wyo.gov
jay.jerde@wyo.gov

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOHN B. "JACK" SPEIGHT, REX ARNEY, ROBIN HURLESS, CHRISTOPHER O. BOSWELL, TAMSIN JOHNSON, DOUG CAMBLIN, TOM LUBNAU, ANNE LADD, KATHY VETTER, CHARLES PELKEY, DAN NEAL, STEVE SIMONTON, GEORGE SIMONTON, DAVE NORTHRUP, GAIL SYMONS, and RUTH ANN PETROFF, <br><br> Plaintiffs, <br><br> v. <br><br> W. FRANK EATHORNE in his capacity as chairman of THE WYOMING REPUBLICAN PARTY, THE WYOMING REPUBLICAN STATE CENTRAL COMMITTEE, and MARK GORDON, in his capacity as Governor of the State of Wyoming, <br><br> Defendants. | Case Number 22-CV-16-S |

### RESPONSE TO PLAINTIFFS'
### MOTION FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

Defendant, Mark Gordon, in his capacity as Governor of the State of Wyoming, through the Wyoming Attorney General's Office, submits his response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

**I.     Background**

On January 13, 2022, Wyoming State Superintendent of Public Instruction, Jillian Balow, notified Governor Mark Gordon that she was resigning from office effective January 16, 2022. The Superintendent's resignation created a vacancy in the office of superintendent. Wyo. Stat. Ann. § 22-18-101(a)(ii). In accordance with the procedure set out by statute, Governor Gordon immediately notified the Chairman of the State Central Committee for the Wyoming Republican Party of the vacancy. Wyo. Stat. Ann. § 22-18-111(a)(i). The statute provides that following the notice, the State Central Committee is to select and transmit to the Governor the names of three persons qualified to hold the office. *Id*. Within five days after receiving the names, the Governor is required to fill the vacancy by temporarily appointing one of the three individuals to the office. *Id*. The person appointed holds the office "until a successor for the remainder of the unexpired term is elected at the next general election and takes office on the first Monday of the following January." Wyo. Stat. Ann. § 28-18-111(a).

On January 22, 2022, the Wyoming Republican State Central Committee submitted three names to Governor Gordon for his consideration. Accordingly, to comply with Wyoming statute, Governor Gordon must fill the vacancy with one of the individuals submitted by the central committee by January 27, 2022. Wyo. Stat. Ann. § 22-18-

111(a)(i). As the duly elected governor of the State of Wyoming, Governor Gordon has taken an oath to uphold the laws of the State of Wyoming. Thus, Governor Gordon's interest in this matter is to comply with Wyoming law and fulfill his duties as the governor. In this instance, under Wyo. Stat. Ann. § 22-18-111(a)(i), Governor Gordon's duties are to (1) notify the Central Committee of the vacancy in office and (2) appoint an individual to the fill the vacancy from the list of three submitted to him by the Central Committee. Governor Gordon fulfilled the first duty on January 13, 2022. He now intends to fulfill his second duty by filling the vacancy with an individual from the list submitted.

The Plaintiffs in this case do not appear to be challenging Governor Gordon's role in the process to fill a vacancy in office. Likewise, the Plaintiffs have noted that they are not challenging the facial constitutionality of the statutes governing the process to fill a vacancy in office. (Mem. in Support of Pls.' Mot. for TRO and Prelim. Inj. at 21.) Instead, Plaintiffs are challenging the method the Central Committee used to select the three names to send to Governor Gordon. That method is not set out in Wyoming statute nor does the Governor participate in that process. Consequently, this case does not present the traditional interests the Governor and the executive branch have in defending the Governor's powers or validly enacted Wyoming statutes. Even so, the Governor does have an interest in being able to exercise his required duties under Wyoming statute as well as in seeing a vacancy in an executive branch elected office filled expeditiously.

## II.     Legal Standard

A court may grant a request for a temporary restraining order "when a movant is faced with the possibility that irreparable injury will occur even before the hearing for a preliminary injunction required by Federal Rule of Civil Procedure 65(a) can be held." *Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 202 (D.D.C. 2011) (citing Fed. R. Civ. P. 65(b)(1). "The purpose of a [temporary restraining order] is to maintain the status quo of a case until the court has an opportunity to hear a request for fuller relief." *Id.* (citation omitted, alteration added).

A party requesting a temporary restraining order must satisfy the same legal standards as a party requesting a preliminary injunction. *Colorado v. DeJoy*, 487 F. Supp. 3d 1061, 1064 (D. Colo. 2020); *United States v. Lowe*, No. 20-cv-0423-JFH, 2021 WL 149838, at *3   (E.D. Okla. Jan. 1, 2021). The party seeking a temporary restraining order

> bears the burden of showing: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest."

*Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003) (citation omitted) (alteration in original). Injunction relief "is an extraordinary remedy," so "the right to relief must be clear and unequivocal." *Greater Yellowstone Coal.*, 321 F.3d at 1256.

## III.    Plaintiffs have not established that they are entitled to the issuance of a temporary restraining order.

This Court should not grant the request for a temporary restraining order because Plaintiffs have not shown that they are clearly and unequivocally entitled to that relief. In

particular, they have not established that they clearly and unequivocally are likely to prevail on the merits of their claim.[1]

Plaintiffs base their "likely to prevail on the merits" argument primarily on *Seergy v. Kings County Republican County Committee*, 459 F.2d 308 (2d Cir. 1972). (Pls.' Mem. at 10-12). In *Seergy*, some enrolled Republican voters and some members of the Kings County Republican County Committee sued the Committee to challenge the system by which it counts votes. *Seergy*, 459 F.2d at 309-10. Specifically, the plaintiffs in *Seergy* challenged a Committee rule that gave each Committee member an equal vote instead of a vote weighted according to the number of Republican voters in the member's district. *Seergy*, 459 F.2d at 310. The plaintiffs argued that the challenged voting rule violated the one person, one vote principle under Equal Protection Clause of the United States Constitution. *Id.*

The *Seergy* court held that the Committee rule "clearly transgressed constitutional bounds" to the extent that it authorized unweighted voting by Committee members when they were performing "public electoral functions." *Seergy*, 459 F.2d at 314. As the *Seergy* court explained:

> In those rare instances where committeemen perform **public electoral functions** (e.g., **the nomination of candidates to fill vacancies** or to run in special elections, or the giving or consent to candidacies by non-members of the party), however, the county committee is required by the Equal Protection

---

[1] Governor Gordon does not concede that Plaintiffs have shown the other three factors for a temporary restraining order. Given the short turnaround, Governor Gordon will focus on the factor that he believes the Court will find determinative.

>Clause to apply the "one-man, one-vote" principle, since in such cases it is unquestionably playing an integral part in the state scheme of public elections.

*Id.* (emphasis added).

Here, Plaintiffs assert *Seergy* is "directly on point" because the "selection of a nominee for public government office was an example pointed to by the *Seergy* court as an exercise of a public electoral function." (Mem. in Support of Pls.' Mot. for TRO and Prelim. Inj. at 10, 14). However, to the extent that the holding in *Seergy* can be read to mean that the United States Constitution requires weighted voting whenever a political party is authorized by law to nominate a candidate to fill a vacancy in an elective office on an interim basis, *Seergy* cannot be squared with the holding in *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982).

*Rodriguez* involved a constitutional challenge to a Puerto Rico statute that vested a political party with the power to fill an interim vacancy in the Puerto Rico Legislature. *Rodriguez*, 457 U.S. at 4. Under the statute in question, if a vacancy in a legislative seat occurred, the political party of the legislator who vacated the seat had the initial opportunity to appoint an interim replacement to fill the seat until the next regularly scheduled election. *Rodriguez*, 457 U.S. at 6. The parties challenging the statute argued *inter alia* that it violated their federal constitutional right to elect their representatives in the Puerto Rico

6

Legislature and violated their right to equal protection. *Rodriguez*, 457 U.S. at 6, 10 n.10. The *Rodriguez* Court rejected both arguments.

In rejecting the right to elect representatives argument, the *Rodriguez* Court acknowledged that "when a state […] has provided that its representatives be elected, a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Rodriguez*, 457 U.S. at 10. It then explained that the statute in question did not "restrict access to the electoral process or afford unequal treatment to different classes of voters or political parties. All qualified voters have an equal opportunity to select a district representative in the general election; and the interim appointment provision applies uniformly to all legislative vacancies, whenever they arise." *Id.*

In rejecting the equal protection argument, the *Rodriguez* Court noted that "[a] vacancy in the legislature is an unexpected, unpredictable event, and a statute providing that all such vacancies be filled by appointment does not have a special impact on any discrete group of voters or candidates." *Rodriguez*, 457 U.S. at 10 n.10. The Court also explained:

> The Commonwealth's choice to fill legislative vacancies by appointment rather than by a full-scale special election may have some effect on the right of its citizens to elect the members of the Puerto Rico Legislature; however, **the effect is minimal, and** […] **it does not fall disproportionately on any discrete group of voters, candidates, or political parties**. […] Moreover, the interim appointment system plainly serves the legitimate purpose of ensuring that vacancies are filled promptly, without the necessity of the expense and inconvenience of a special election. The Constitution does not preclude this practical and widely accepted means of addressing an infrequent problem.

*Rodriguez*, 457 U.S. at 12. (citation omitted, alterations and emphasis added).

Admittedly, the appellants in *Rodriguez* did not make a one person, one vote argument in challenging the Puerto Rico statute. But the one person, one vote principle "is designed to facilitate fair and effective representation[.]" *Evenwell v. Abbott*, 578 U.S. 54, 73 (2016) (citation, internal quotation marks, and alteration omitted). The analysis in *Rodriguez* makes clear that a statute allowing a political party to select someone to fill a vacancy in an elective office on an interim basis does not deprive voters of fair and effective representation.

Here, Wyo. Stat. Ann. § 22-18-111(a)(i) authorized the Wyoming Republican State Central Committee to nominate three persons, one of whom will be selected to temporarily fill the office of Wyoming State Superintendent of Public Instruction. Consistent with *Rodriguez*, this statutory process did not deprive Wyoming voters of fair and effective representation, regardless of the procedure the Committee followed to select the nominees. Plaintiffs, therefore, are not likely to prevail on the merits of their claim. Accordingly, the motion should be denied.

DATED this 26th day of January, 2022.

ATTORNEYS FOR DEFENDANT
GOVERNOR MARK GORDON

/s/ Jay Jerde
Bridget Hill, Bar No. 6-3616
Wyoming Attorney General
Ryan Schelhaas, Bar No. 6-3321
Chief Deputy Attorney General
Jay Jerde, Bar No. 6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7841
(307) 777-6869 Facsimile
bridget.hill@wyo.gov
ryan.schelhaas@wyo.gov
jay.jerde@wyo.gov

## CERTIFICATE OF SERVICE

The undersigned does certify that on the 26th day of January, 2022, a true and correct copy of the foregoing **Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction** was served as indicated on the following:

| | |
|---|---|
| Patrick J. Crank | [X]  CM/ECF |
| Crank Legal Group, P.C. | [X]  EMAIL |
| pat@cranklegalgroup.com | |
| | |
| Brian Shuck | [X]  CM/ECF |
| Law Office of Brian C. Shuck, P.C. | [X]  EMAIL |
| brianshuck@vcn.com | |

/s/ Jay Jerde
Jay Jerde
Special Assistant Attorney General

9