BRIAN C. SHUCK, BAR NO. 6-2817
LAW OFFICE OF BRIAN C. SHUCK, P.C.
P.O. Box 3029
Cheyenne, Wyoming 82003
307.432.0767
307.432.0310 fax
E-mail: brianshuck@vcn.com

*Counsel for Defendants Wyoming Republican Party Chairman W. Frank Eathorne and Wyoming Republican State Central Committee*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOHN B. "JACK" SPEIGHT, REX ARNEY, ROBIN HURLESS, CHRISTOPHER O. BOSWELL, TAMSIN JOHNSON, DOUG CAMBLIN, TOM LUBNAU, ANNE LADD, KATHY VETTER, CHARLES PELKEY, DAN NEAL, STEVE SIMONTON, GEORGE SIMONTON, DAVE NORTHRUP, GAIL SYMONS, and RUTH ANN PETROFF,  )<br><br>    Plaintiffs,  )<br><br>v.  )<br><br>W. FRANK EATHORNE in his capacity as chairman of THE WYOMING REPUBLICAN PARTY, ) THE WYOMING REPUBLICAN STATE CENTRAL COMMITTEE, and MARK GORDON, in his capacity as Governor of the State of Wyoming,  )<br><br>    Defendants.  ) | Case Number: 22-CV-16-S |

## MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT .............................................................................................................. 2

    I.    Plaintiffs lack standing because even under their proposed voting method, the outcome would have been the same. ................................................................................ 2

    II.    Plaintiffs are not entitled to the extraordinary relief of a temporary restraining order. ....... 5

        A.    Plaintiffs are unlikely to prevail on their claim that the one-person, one-vote rule applies to political party nominations for appointments to vacant statewide offices. ............. 6

        B.    Plaintiffs cannot show irreparable harm. ....................................................... 9

        C.    The balance of harms and public interest favors denying Plaintiffs' motion. .............. 12

CONCLUSION ........................................................................................................... 2

# TABLE OF AUTHORITIES

**Cases**

*Associated Enterprises, Inc. v. Toltec* 490 P.2d 1069, (Wyo. 1971) ............................................. 7

*Clements v. Fashing*, 457 U.S. 957 (1982) ...................................................................... 2

*Colorado v. EPA*, 989 F.3d 874 (10th Cir. 2021). .............................................. 2, 5, 8, 9

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ...................................................... 10

*Gorin v. Karpan*, 775 F. Supp. 1430 (D. Wyo. 1991) .................................................. 8

*Greenbaum v. Bailey*, 781 F.3d 1240 (10th Cir. 2015)................................................. 2

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013)......................... 2

*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536 (10th Cir. 1994)................................................................................................................. 10

*Kehoe v. Casadei*, No. 11-cv-0408, 2011 WL 5008044 (N.D.N.Y. Oct. 20, 2011)...................... 8

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .................................................... 2

*Marchioro v. Chaney*, 442 U.S. 191 (1979) ................................................................. 7

*Martinez v. Draper City*, No. 2:17-cv-00772, 2017 WL 3128806 (D. Utah July 21, 2017) ........ 10

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) (per curiam) ........................................... 5

*Moore v. Ogilvie*, 394 U.S. 814 (1969).......................................................................... 6

*N.M. Dep't of Game & Fish v. Dep't of the Interior*, 854 F.3d 1236 (10th Cir. 2017) .............. 2, 5

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004) (en banc)...................................................................................................................... 5

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009)........................................ 10

*Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982)....................................... 8, 9

*Schaefer v. Thompson*, 251 F. Supp. 450 (D. Wyo. 1965) ............................................ 8

*Seergy v. Kings County Republican County Committee*, 459 F.2d 308 (2d Cir. 1972)................. 7

*Semple v. Griswold*, 934 F.3d 1134 (10th Cir. 2019) .................................................... 7

*Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201 (D. Utah 2004), *aff'd*, 425 F.3d 1249 (10th Cir. 2005).................................................................................. 10, 12

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000).................................. 4

**Statutes**

W.S. §22-18-111 .................................................................................................. 1, 6, 9, 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs ask this Court to enjoin the Wyoming Governor and the Wyoming Republican Party from fulfilling their duties under Wyoming Statutes §22-18-111 to name a successor to the vacant office of State Superintendent of Public Instruction based on the premise that the §22-18-111's nomination process is subject to the one-person, one-vote principle. But the handful of cases Plaintiffs cite to support this extraordinary request for relief do not support that premise. Not one of the Plaintiffs' cited cases involves state political committees nominating potential successors to a vacant statewide office that will ultimately be filled by gubernatorial appointment. Indeed, the involvement of the Governor—a statewide officer elected by popular vote—in this vacancy-filling process distinguishes it from every case Plaintiffs cite, by itself precluding a finding that Plaintiffs are likely to succeed on this claim. And in any case, Plaintiffs do not establish that even if the nomination process had occurred using their preferred method, the outcome here would not change, making a TRO effectively meaningless.

Beyond that, though §22-18-111 has been Wyoming law for more than 60 years—including for decades while many Plaintiffs served in the Legislature, when other changes were made to that statutory provision—Plaintiffs waited until two days before the statutory appointment deadline to challenge it. Because this delay prejudices Defendants and the Court, it further undermines Plaintiffs' claim of irreparable harm. Finally, the balance of harms and public interest favors allowing Wyoming to carry out its duly enacted process for filling a vacant statewide office. The Court should deny Plaintiffs' motion for a temporary restraining order.

**ARGUMENT**

I.     **Plaintiffs lack standing because even under their proposed voting method, the outcome would have been the same.**

To establish standing, the plaintiffs must demonstrate that they have suffered an actual, concrete "injury in fact," that is "traceable" to the defendants and that "will be redressed by a favorable decision." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1185 (10th Cir. 2013). The plaintiffs bear the burden to establish standing. *Id.* Plaintiffs must establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Accordingly, at the preliminary-injunction stage, they "must make a clear showing that they have standing." *Hobby Lobby*, 723 F.3d at 1184-85 (cleaned up). They must demonstrate that their injury is "certain, actual, and imminent." *Colorado v. EPA*, 989 F.3d 874, 887 (10th Cir. 2021). After all, "[i]ssuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *N.M. Dep't of Game & Fish v. Dep't of the Interior*, 854 F.3d 1236, 1253 (10th Cir. 2017).

To establish an actual, concrete injury in fact, a party must show that the challenged action "affects him in a personal and individual way." *Greenbaum v. Bailey*, 781 F.3d 1240, 1243 (10th Cir. 2015). Accordingly, as the Supreme Court has held, a plaintiff challenging a state election statute under the Equal Protection Clause must show that the statute's application's "adversely affects his own rights." *Clements v. Fashing*, 457 U.S. 957, 966 n.3 (1982). In *Clements*, the Court allowed only one plaintiff's claim to proceed because he alone could show that the challenged statute affected his eligibility for office. *Id.* at 966.

Here, the Plaintiffs lack standing because they cannot show that the challenged process

affected any of them. The only plaintiffs involved in this process were Doug Camblin and Tom Lubnau, who each voted once in the nomination process, and Dave Northrup, who came in sixth place as a candidate—with a total of seven votes. Doc. 1 ¶¶6, 7, 14. But they have provided no evidence—and may not be able to—that under the nomination process that they demand, where votes would be weighted by population, the outcome would have been any different or they would have been affected in any way.

In the State Central Committee's nomination process that they challenge, a total of 73 voters voted for three separate candidates each. The top three candidates in this nomination process received, respectively, 62, 56, and 52 votes. *See* Ex. A. These three candidates received, respectively, 85%, 76%, and 71% of the total votes that any individual candidate could receive. The fourth-place candidate received only 19 votes. *Id.* Northrup, the plaintiff here, received seven votes. *Id.* Plaintiffs have presented no evidence that Northrup or any candidate could have overcome this deficit had the votes been weighted based on the population of registered Republicans in each county.

And the available evidence suggests that the results would not have changed. For example, it appears that it would have been mathematically impossible for Northrup to win, even if the votes were weighted by population of registered Republicans in each county. At most, Northrup's seven total votes could have come from seven of the nine State Central Committee voters from the three counties with the most registered Republicans—Laramie, Natrona, and Campbell. *See* Ex. B. In that unlikely scenario, were those votes to be weighted by population, Northrup would have received at most 30% of the vote. Meanwhile, third-place candidate Brian Schroeder's 52 votes could have—in the worst-case scenario—come from the 51 State Central Committee voters each in the 17 counties with the *fewest* registered Republicans, plus a single State Central Committee

voter in the 18th least populated county. In that unlikely scenario, Schroeder's vote total would have amounted to 47% of the votes weighted by population. And in fact, the affidavits that Defendants have received suggest so far that voters in relatively high-population counties voted for Schroeder. *See* Ex. C. In other words, Plaintiffs not only have failed so far to show that they were clearly injured, but they cannot show it.

Furthermore, using the Republican voter data from each county, even if each vote were weighted by county, it is unlikely that even the fourth-place candidate—Megan Degenfelder—could have been nominated. As far as Defenants can tell, to surpass Schroeder's total, Degenfelder would have needed to receive all nine available votes from the three State Central Committee voters each in the three counties with the most registered Republicans, plus almost all of her remaining 10 votes from voters in three of the next four most populous counties. *See* Ex. B.

Plaintiffs respond by raising a "hypothetical" scenario under which Northrup received six votes and the winning candidates received 24 votes. Doc. 7 at 16. But importantly, the Plaintiffs brought an as-applied challenge, not a facial challenge, so the only relevant question is whether they were injured by the specific acts that they challenge here. *Id.* at 21 ("To be clear, plaintiffs do not contest the facial constitutionality of the governing Wyoming statutes.") Because they have not shown that the allocation of voting powers among State Central Committee members affected *them*, they have not suffered any injury.

Finally, the plaintiffs' alleged injury is not redressable. An injury is redressable only if there is a "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). Here, if this Court orders the relief that the plaintiffs have requested, then the following is likely to happen. First, the State Central Committee will weight its members' votes based on the percentage of registered Republican voters in each county. Second, those members will vote again as they

4

did last weekend. And third, the same three candidates will be nominated for the Superintendent position. Many people will be inconvenienced and frustrated, and the people of Wyoming will suffer an unnecessary delay in the democratic operation of their government. But no plaintiff's injuries will be redressed. It follows that each lacks standing to proceed with this challenge.

## II.    Plaintiffs are not entitled to the extraordinary relief of a temporary restraining order.

Even if Plaintiffs have standing to a preliminary injunction or TRO, that relief is a "drastic" and "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam); *N.M. Dep't of Game & Fish*, 854 F.3d at 1253. To obtain preliminary injunctive relief, plaintiffs must establish that (1) they are "substantially likely to succeed on the merits" of their claims, (2) they will "suffer irreparable injury if the injunction is denied," (3) their "threatened injury outweighs the injury the opposing party will suffer under the injunction," and (4) "the injunction would not be adverse to the public interest." *Id.* at 1245-46. The Tenth Circuit recently reiterated that to be entitled such relief, a plaintiff must make a "clear and unequivocal" showing. *Colorado v. EPA*, 989 F.3d 874, 886 (10th Cir. 2021).

When plaintiffs seek preliminary injunctive relief that "alter[s] the status quo," their requests are especially disfavored. *N.M. Dep't of Game & Fish*, 854 F.3d at 1246 n.15. When seeking such relief, they must meet an even more "heightened standard" that requires an especially "strong showing." *Id.*; *see also O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc). They must do so "both with regard to the likelihood of success on the merits and with regard to the balance of the harms." *N.M. Dep't of Game & Fish*, 854 F.3d at 1246 n.15. The plaintiffs here seek preliminary injunctive relief that would upend the

status quo. In the normal course of things, a statewide office vacancy may be filled swiftly upon the nominations of the departing officer's party and the confirmation of the governor. W.S. 22-18-111 (a)(i). This procedure is mandated by law and is necessary for the continuing functioning of the government according to the will of the people as expressed through their representatives. It is especially crucial that in these times—when education in America is subject to increasingly contentious debates that warrant democratic accountability—the Superintendent's office be filled according to the process set out by the legislature. Doc. 1 at 17-18.[1] The Plaintiffs ask this Court to intervene in that process and drastically reorder it—*after* the Party has already sent its nominees to the Governor. They therefore seek a change to the status quo and must meet the highest standard for relief.

A.   **Plaintiffs are unlikely to prevail on their claim that the one-person, one-vote rule applies to political party nominations for appointments to vacant statewide offices.**

Even if Wyoming Statutes §22-18-111(a)(i)'s process for filling the state Superintendent vacancy makes the Wyoming GOP "an integral part of th[is] election process," *Moore v. Ogilvie*, 394 U.S. 814, 818 (1969)—such that some constitutional requirements apply to the Party's actions—Plaintiffs do not carry their burden of showing that the Equal Protection Clause's one-person, one-vote requirement applies to this *specific* action: a party's state committee's choosing three nominees for a vacant statewide office that will be filled by gubernatorial appointment. In fact, not one of the cases Plaintiffs cite in their success-on-the-merits arguments (at 9-19) extends the one-person, one-vote principle to these specific circumstances. Consider each case in turn.

Plaintiffs rely (at 10, 11, 12, 13) principally on *Seergy v. Kings County Republican County Committee*, but *Seery* involved "*county* political committee[s]" whose authority expressly

---

[1] The current interim Director is registered as a member of the party that does not represent the majority of Wyoming voters. *See* Ex. D.

*excluded* power to act on statewide offices. 459 F.2d 308, 309 (2d Cir. 1972) (emphasis added); *see id.* at 310 ("The committee, for instance, may nominate a candidate to fill a vacancy in an elective office (*except for statewide offices*) which occurs after the fifth Tuesday preceding the fall primary by majority vote of a quorum.") (emphasis added). *Seergy* thus could not have addressed how (if at all) the one-person, one-vote principle applies to nominations for statewide offices to be filled by gubernatorial appointment.

Plaintiffs also cite (at 11-12) *Marchioro v. Chaney*, but there the Court addressed only potential constitutional questions about the state party committee's "'purely internal party decisions,'" 442 U.S. 191, 197 (1979)—issues that even *Seergy* recognizes are not subject to one-person, one-vote rules, *see* 459 F.2d at 313-14 ("We therefore decline to extend the Equal Protection requirement of the Fourteenth Amendment to votes taken by the county committee in the conduct of its internal party affairs which have no direct relation to the electoral process."). *Marchioro* eliminated any doubt: it had "no occasion" to consider questions beyond those bounds, and it did not do so. *Id.* at 197 n.12.

Plaintiffs' argument finds no more support in *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, which holds only that the functions of a watershed improvement district "are proprietary and in the nature of special or private corporation interests," meaning those districts "do not exercise delegated sovereign powers for the benefit of people generally." 490 P.2d 1069, 1070-71 (Wyo. 1971). Nor does their reliance (at 15) on *Semple v. Griswold*, 934 F.3d 1134 (10th Cir. 2019) change things; *Semple* rejected a one-person, one-vote challenge to a Colorado law requiring initiative proponents to gather signatures "from at least two percent of registered voters in each of Colorado's thirty-five state senate districts," holding that "it is not unconstitutional to base direct democracy signature requirements on total population." *Id.* at 1137,

1141.

Plaintiffs also cite (at 16-17) two decisions from this Court addressing one-person, one-vote issues arising from allegedly malapportioned Wyoming Senate and House districts. *Schaefer v. Thompson*, 251 F. Supp. 450, 456 (D. Wyo. 1965); *Gorin v. Karpan*, 775 F. Supp. 1430, 1437 (D. Wyo. 1991). Those decisions self-evidently do not involve one-person, one-vote challenges to statewide offices. Plaintiffs also appear to rely (at 19) on *Kehoe v. Casadei*, No. 11-cv-0408, 2011 WL 5008044 (N.D.N.Y. Oct. 20, 2011), but that case involved a city party committee's decision to drop "weighted vot[ing] on any matter acted upon by the City of Rome Republican Committee, including but not limited to the endorsement of candidates." *Id.* at *1. Nothing in *Kehoe* suggests that the city committee played any role in nominating statewide officers.

That's it—that's the universe of cases Plaintiffs cite to contend that they're likely to succeed on the merits of their one-person, one-vote claim. Read carefully, not one goes as far as Plaintiffs urge this Court to go here. Rather, taking Plaintiffs' cited authority at its word, this Court apparently would be the first in the Country to hold that the one-person, one-vote principle applies to a state party committee's process to nominate multiple candidates for a vacant statewide office when the eventual appointee from among those nominees is ultimately chosen by the Governor.

That's a steep hill to climb in any case. It's even more so when necessary to support extraordinary equitable relief like a temporary restraining order that alters the status quo. *Colorado v. EPA*, 989 F.3d at 886. And it might be an unscalable height given the Supreme Court's decision in *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982). There, the Court rejected an equal protection challenge to a Puerto Rico statute that let political parties themselves fill a vacancy in the Commonwealth's legislature, reasoning that a "vacancy in the legislature is an unexpected, unpredictable event, and a statute providing that all such vacancies be filled by appointment does

not have a special impact on any discrete group of voters or candidates." *Id.* at 10 n.10. The Court also explained that "the interim appointment system plainly serves the legitimate purpose of ensuring that vacancies are filled promptly, without the necessity of the expense and inconvenience of a special election." *Id.* at 12. To be sure, *Rodriguez* did not address or resolve a one-person, one-vote claim, but it does confirm that allowing political parties to select replacement officeholders for vacant offices has at most a "minimal" effect on a State's citizens that "does not fall disproportionately on any discrete group of voters, candidates, or political parties." *Id.* at 12. In other words, such a process is not inherently unfair.

What's more, Wyoming's process in §22-18-111 differs in a critical way from the Puerto Rico process that *Rodriguez* upheld. The political party in Puerto Rico could by itself fill a vacancy by nominating just a single candidate, *see* 457 U.S. at 4-5, but here the Wyoming GOP selects three nominees and the vacancy is ultimately filled by the Governor's appointment. The Governor is a statewide officeholder selected by popular vote; no possible one-person, one-vote issues attend the Governor's election. By interposing the Governor between the state political committee's recommendations and an unfilled vacancy, Wyoming Statutes §22-18-111 creates an additional protective barrier to potential one-person, one-vote problems that neither Plaintiffs nor their cited cases discuss. This only further precludes Plaintiffs' inability to show a "clear and unequivocal" right to relief. *Colorado v. EPA*, 989 F.3d at 886.

**B.    Plaintiffs cannot show irreparable harm.**

As discussed, Plaintiffs are unlikely to succeed on their one-person, one-vote claim. Because that is the only kind of constitutional violation they allege, their failure to establish that claim precludes a finding that anything else about Wyoming Statutes §22-18-111's process harms them—at all or irreparably.

Beyond that, "'[d]elay in seeking preliminary relief cuts against finding irreparable

injury.'" *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009)); *see also Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994) ("As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."). To be sure, "there is no categorial rule that delay bars the issuance of an injunction," but when the delay was unreasonable, reflecting "a decision by the" plaintiff "to 'sit on its rights'" and thereby "prejudice the opposing party," courts routinely rely on those facts to deny extraordinary relief. *Fish*, 840 F.3 at 753.

Two examples from other district courts in this circuit show why these considerations bar Plaintiffs' request for extraordinary relief. In *Martinez v. Draper City*, a city invoked its city policies and Utah law to deny a mayoral candidate's application to participate in the city's parade as a political candidate. No. 2:17-cv-00772, 2017 WL 3128806, at *1-2 (D. Utah July 21, 2017). The candidate sought a TRO challenging that decision 30 days after the city denied his request— and just three days before the parade was scheduled. *See id.* at *2. The district court said the case's "late filing" was "very concerning" and "subjected the defendants to the greatest inconvenience possible and g[ave] the court the least amount of time possible to resolve the motion." *Id.* Those were "not the type of actions which would appropriately invoke the aid of equity." *Id.*

Similarly, in *Utah Gospel Mission v. Salt Lake City Corp.*, a group of plaintiffs challenged a city's sale of a pedestrian easement on a downtown city block to a church, alleging that the sale deprived them of prime land on which to exercise their First Amendment rights. 316 F. Supp. 2d 1201, 1218-19 (D. Utah 2004), *aff'd*, 425 F.3d 1249 (10th Cir. 2005). But the plaintiffs did not file suit until three months after the sale closed; waited three more months to seek injunctive relief; then amended their complaint after yet another month. *See id.* at 1221. In those circumstances, "Plaintiffs' delay belies any irreparable injury to their rights." *Id.* That delay "tend[ed] to indicate

at least reduced need for such drastic, speedy action" as a TRO or preliminary injunction. *Id.* (internal quotation marks omitted).

So too here. Wyoming Statues §22-18-111 was codified in 1957 and has been amended 19 times since then. At any time during the last 65 years, Plaintiffs could have raised and addressed what they now claim is a constitutional flaw in that provision. Indeed, many Plaintiffs had ample chance to do so. Plaintiff Lubnau was a Wyoming state legislator from 2004 to 2014 and served as Wyoming House Speaker from 2013 to 2014. The annotations following Wyoming Statutes §22-18-111 demonstrate that the Wyoming Legislature amended that statute five times—in 2004, 2006, 2009, 2011, and 2013—while Mr. Lubnau was in office. If Wyoming Statutes §22-18-111 really contains the acute constitutional problem of which Mr. Lubnau now complains, he could have introduced and passed a bill amending it during the 10 years he was in office (or along with the other five bills that amended it during his legislative service) instead of filing a lawsuit just two days before the Governor's statutory deadline to fill the current vacancy.

Similarly, Plaintiff Rex Arney served in the Wyoming House in 1973 and in the Wyoming Senate from 1977-1988, Plaintiff Charles Pelkey was a legislator from 2013-2020, and Plaintiff Dave Northrup was a legislator from 2013 until he lost reelection in 2020. One or more of these legislators were in office when various vacancies were filled and when the vacancy statute was amended in 1979, 1981, 1985, 2013, 2015, and 2018—but they appear not to have taken any steps to correct the statute's purported flaw.

Further, Plaintiffs' counsel here served as Wyoming Attorney General for Democrat Governor Dave Freudenthal from 2002 to 2009.  During that time, Wyoming Statutes §22-18-111 was amended twice—in 2004 and 2006. The Attorney General's Office advises the Legislature and Governor when a bill raises potential constitutional problems, and there is no record of the

Attorney General's Office having advised the Governor or Legislature that §22-18-111 raised constitutional concerns. What's more, Governor Freudenthal used the very same vacancy statutes to appoint a replacement for Superintendent Blankenship when he resigned, and the Wyoming GOP supplied 3 names to Governor Freudenthal using the very same process it followed four days ago without any apparent constitutional objection from the Governor or the Attorney General's Office.

In short, a number of Plaintiffs have served in positions where they personally could have taken steps to fix the purported constitutional problem they now complain of here. But they did not. Perhaps they didn't because they were comfortable with what they now claim is an unconstitutional process when their chosen candidate was selected to fill the vacancy. Whatever the reason, the Court should not allow plaintiffs to sit on their hands for decades and then claim— just days before the statutory appointment deadline—that the process is unconstitutional. Such a "late filing" is "very concerning"; it "subject[s] the defendants to the greatest inconvenience possible and give[s] the court the least amount of time possible to resolve the motion." *Martinez*, No. 2:17-cv-00772, 2017 WL 3128806, at *1-2. That decades-long delay is "not the type of action[] which would appropriately invoke the aid of equity," *id.*, and it "belies any irreparable injury to [Plaintiffs'] rights," *Utah Gospel Mission*, 316 F. Supp. 2d at 1221.

### C.    The balance of harms and public interest favors denying Plaintiffs' motion.

The final two equitable factors also favor denying Plaintiffs' motion. A temporary restraining order would prevent Wyoming from "enforcing its duly enacted" law, and that restriction "clearly inflicts irreparable harm on the State" and on the Party given its statutory role in filling this vacancy. *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (explaining that when a state is

enjoined "from effectuating statutes enacted by representatives of the people, it suffers a form of irreparable injury"). By the same token, the public interest favors letting the Governor carry out his statutory appointment responsibilities to ensure all statewide offices are filled, and letting the Party fill its statutory role so that the appointee will "fairly reflect the will of the voters" who selected the prior officeholder. *Rodriguez*, 457 U.S. at 12.

Finally, because the Plaintiffs' preferred nomination method would not change the outcome here, a temporary restraining order will only unnecessarily delay the appointment, wasting time without producing any different result. And a restraining order could also be used improperly to impugn Defendant Eathorne and the members of the State Central Committee, who merely took the same actions that numerous other party chairmen and committee members have taken repeatedly in years past when selecting nominees for vacancies who are then sent to the Governor. Because Plaintiffs have not established a clear and unequivocal right to relief, those sorts of harms further support denying the motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary restraining order.

Dated:   January 26, 2022

Respectfully submitted,

By: */s/ Brian C. Shuck*

BRIAN C. SHUCK, BAR NO. 6-2817
LAW OFFICE OF BRIAN C. SHUCK, P.C.
P.O. Box 3029
Cheyenne, Wyoming 82003
307.432.0767
307.432.0310 fax
E-mail: brianshuck@vcn.com

TYLER R. GREEN*
JEFFREY S. HETZEL*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd.
Suite 700
Arlington, Virginia 22209
703.243.9423

*Pro Hac Vice applications forthcoming*

*Counsel for Defendants Wyoming Republican
Party Chairman and Wyoming Republican State
Central Committee*

14

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a true and correct copy of the foregoing MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER was properly served as indicated upon the following listed persons on this 26th day of January, 2022:

Pat Crank                                    [X]      CM/ECF
Crank Legal Group, PC               [X]      Email
pat@cranklegalgroup.com

Jay Jerde                                    [X]      CM/ECF
Special Assistant Attorney General    [X]      Email
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
jay.jerde@wyo.gov

Bridget Hill
Attorney General
Ryan Schelhaas                     [X]      CM/ECF
Chief Deputy Attorney General      [X]      Email
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
ryan.schelhaas@wyo.gov


                               /s/ Brian C. Shuck
                               _____
                               Brian C. Shuck